UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MADISON PROPERTY L.L.C. and ANDREW BRENNER,<br><br>Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

The United States of America, for its complaint against Defendants Madison Property L.L.C. and Andrew Brenner, alleges:

## NATURE OF ACTION

1. This is an action brought by the United States to enforce the provisions of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq.* ("Fair Housing Act").

2. The United States brings this action for injunctive relief and monetary damages on behalf of Beverly Boucher ("Complainant") pursuant to the Fair Housing Act, 42 U.S.C. § 3612(o).

3. The United States alleges that Defendants discriminated in the rental of a dwelling because of a prospective renter's disability[1] by making housing unavailable and

---

[1] The Fair Housing Act uses the term "handicap." *See* 42 U.S.C. § 3602(h). However, consistent with modern usage, the government uses the term "disability" in this Complaint.

1

by refusing to make reasonable accommodations in rules, policies, practices, or services when such accommodations were necessary to afford a person equal opportunity to enjoy a dwelling, in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(1) and (f)(3)(B).

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 3612(o).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 3612(o).

## PARTIES

6. Plaintiff is the United States of America.

7. At all times relevant to this Complaint, Defendant Madison Property L.L.C. ("Defendant Madison Property") owned the apartment complex commonly referred to as Madison Place, located at 515 West 7th Street, Winona, Minnesota (the "Subject Property").

8. At all times relevant to this Complaint, Defendant Andrew Brenner ("Defendant Brenner") was registered with the Minnesota Secretary of State as the Manager of Defendant Madison Property, acted as landlord of the Subject Property, provided day-to-day management for the Subject Property, had the authority to grant routine reasonable accommodation requests at the Subject Property, and retained final decision-making authority over reasonable accommodation requests at the Subject Property.

9. The Subject Property constitutes a "dwelling" within the meaning of 42 U.S.C. § 3602(b).

## FACTS

10. Complainant is a person with a disability within the meaning of 42 U.S.C. § 3602(h). Complainant has been diagnosed with generalized anxiety disorder and experiences panic attacks. Since June 2019, she has regularly seen a Licensed Professional Clinical Counselor, Catherine Brightman. Complainant's disability affects the major life activities of caring for herself and interacting with others.

11. In or around June 2019, while navigating a difficult marriage and divorce, Complainant was diagnosed with acute generalized anxiety disorder. She suffered multiple panic and anxiety attacks around this time and was affected by her disorder on most days. After she separated from her husband, Complainant's cat Stir Fry became her emotional support animal (ESA) upon her therapist's recommendation. Stir Fry has been living with Complainant as an ESA since that time, helping to alleviate the symptoms of Complainant's disability by providing affection and emotional support, helping to alleviate Complainant's difficulty in caring for herself, providing support to Complainant in daily life and on hard days, assisting with mood regulation, and comforting Complainant when she experiences acute anxiety symptoms.

12. In or around February 2021, Complainant decided to seek new housing instead of renewing her lease at her apartment in West St. Paul, Minnesota. She wished to move to Winona, Minnesota.

3

13. On March 13, 2021, Complainant completed an online interest form for an apartment unit at the Subject Property. Complainant wished to live at the Subject Property, which was once an elementary school, because she had attended summer school there as a child and had fond memories of the building. Additionally, Complainant found the Subject Property attractive because it was near friends, its unusual architectural features gave it "character," and because the building had space that was potentially to be used for communal amenities.

14. On or about March 20, 2021, Complainant and a friend toured the Subject Property. During the tour, Complainant found Unit #111 ("the Unit") at the Subject Property particularly appealing. The Unit, which before its renovation had been a principal's and nurse's office, had a unique doorway and layout, lots of storage space, and a colorful bathroom. The Unit also had a dishwasher, washer, and dryer. The Unit was spacious enough for Complainant to work from home and was newly renovated, so there had been no prior tenants. The Unit had a rent that was less expensive than the rent at her West St. Paul apartment and was within walking distance to a friend's home. Complainant found the unit appealing for these and other reasons.

15. While Complainant and her friend were viewing the upper area of the Subject Property, Defendant Brenner briefly left to attend to other matters, leaving Complainant and her friend with his assistant, showing coordinator Lori Albrieght. Complainant told Albrieght that she had an emotional support animal.

16. Albrieght replied that she did not believe Complainant's emotional support animal would be a problem.

17. Once Defendant Brenner returned, Albrieght left and Complainant also told Defendant Brenner about her emotional support animal. Defendant Brenner replied to Complainant, in the presence of Complainant's friend, "We don't have a pet policy yet. Can't you just get rid of it? Or give it away for three months and maybe we'll have a pet policy by then?"

18. Before leaving the Subject Property that day, Complainant chose Unit #111 at the Subject Property and paid Defendant Brenner a $500 security deposit by check to reserve the unit. Defendant Brenner accepted the $500 check.

19. Later that day, Defendant Brenner sent Complainant a rental application, which Complainant completed and returned shortly thereafter.

20. At 11:19 a.m. on March 25, 2021, Defendant Brenner sent Complainant an e-mail stating, "Hi bev, here is the lease. please read and make sure all is correct." Upon her review, Complainant noted that the lease agreement reflected an incorrect lease term and failed to reflect that the first month of rent was to be pro-rated. The lease agreement contained a provision titled "ANIMALS," which stated that the tenant could not keep any dogs, cats, or birds in the apartment. The lease agreement contained no exception for service, support, or assistance animals.

21. At 11:47 a.m. on March 25, 2021, Complainant replied and requested that Defendant Brenner correct the lease to reflect the terms they had previously agreed upon. At 11:57 a.m., she sent another e-mail reminding Defendant Brenner about her emotional support animal and attached a letter dated March 20, 2021, from her therapist, Catherine Brightman. Among other things, the letter stated that Ms. Brightman had Complainant

5

under her care and she was familiar with her condition; that Ms. Boucher had a disability; and that Ms. Brightman recommended Ms. Boucher have an emotional support animal in order to alleviate her symptoms, live independently, and cope with her disability. The letter also included Ms. Brightman's professional credentials and contact information, and it noted Ms. Brightman's availability to respond to additional questions. Complainant told Defendant Brenner that he could contact Ms. Brightman with any questions.

22. At 7:52 p.m. on March 25, 2021, Defendant Brenner replied to Complainant's e-mail stating, in full: "Pets are not allowed, sorry[.]"

23. At 9:46 a.m. on March 26, 2021, Complainant replied to Defendant Brenner's email, informing him of her right to keep her emotional support animal. She included a link to the part of the Department of Housing and Urban Development's (HUD's) website on reasonable accommodations.

24. At 11:46 a.m. on March 25, 2021, Defendant Brenner replied, "There are other places. Dont [sic] worry. I can refund your deposit."

25. As a result of Defendant Brenner's refusal to approve Complainant's reasonable accommodation request for an assistance animal, Complainant felt that she was not able to pursue the rental at the Subject Property and requested that Defendant Brenner return her security deposit so that she could put it towards a different apartment.

26. As a result of Defendant Brenner's denial of her request for a reasonable accommodation, Complainant had to take time off from work to find alternative housing in a short timeframe. Complainant did not receive her security deposit back until April 7,

2021, by which time Complainant had only twenty-three days before she would be homeless. This caused Complainant significant additional stress and anxiety.

27. At the time of Complainant's rental application, Defendant Brenner understood what emotional support animals were.

28. At the time of Complainant's rental application, Defendant did not request information about Complainant's disability or seek any additional information from Complainant or her therapist to verify her disability-related need for an emotional support animal.

29. As a result of Defendants' actions, Complainant suffered actual damages, including, but not limited to, emotional distress, inconvenience, frustration, diminished wages and/or benefits, and loss of housing opportunity.

## PROCEDURAL BACKGROUND

30. On or about July 27, 2021, Complainant filed a complaint with the U.S. Department of Housing and Urban Development (HUD) alleging that Defendants discriminated against her on the basis of her disability. On or about July 20, 2022, Complainant filed an amended complaint.

31. During the investigation into the housing discrimination complaint, Defendant Brenner stated that he still had the same "no pets" policy for the Subject Property and did not advise HUD of any exceptions for assistance, service, or support animals. As required by the Fair Housing Act, 42 U.S.C. § 3610(a) and (b), the Secretary of HUD conducted an investigation of the complaint, attempted conciliation without success, and prepared a final investigative report.

32. Based on the information gathered in the HUD investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g), determined that reasonable cause exists to believe that illegal discriminatory housing practices occurred. On September 21, 2022, the Secretary issued a Determination of Reasonable Cause and Charge of Discrimination pursuant to 42 U.S.C. § 3610(g), charging the Defendants with discrimination under the Fair Housing Act.

33. On October 5, 2022, Complainant elected to have the claims asserted in HUD's Charge of Discrimination resolved in a federal civil action pursuant to 42 U.S.C. § 3612(a).

34. On October 6, 2022, a HUD Administrative Law Judge issued a Notice of Election and terminated the administrative proceedings on the HUD complaint filed by Complainant. Following the Notice of Election, the Secretary of HUD authorized the Attorney General to commence a civil action pursuant to 42 U.S.C. § 3612(o).

35. The United States now timely files this Complaint pursuant to the Fair Housing Act, 42 U.S.C. § 3612(o).

## **FAIR HOUSING ACT VIOLATIONS**

36. The United States incorporates by reference the preceding paragraphs of this Complaint.

37. Defendants Madison Property and Andrew Brenner made housing unavailable by refusing to grant Complainant's request for a reasonable accommodation that was necessary to afford her an equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(1), (f)(3)(B).

38. Complainant is an aggrieved person as defined in 42 U.S.C. § 3602(i) and has suffered injuries as a result of Defendants' actions.

39. Defendants' discriminatory actions were intentional, willful, and taken in disregard of the rights of the Complainant.

## **REQUEST FOR RELIEF**

WHEREFORE, the United States requests that this Court:

1. Declare that Defendants' discriminatory housing practices as set forth above violate the Fair Housing Act;

2. Enjoin and restrain Defendants, their officers, employees, agents, successors, and all other persons or corporations in active concert or participation with Defendants, from:

   A. Discriminating in the sale or rental, or otherwise making unavailable or denying, a dwelling to any buyer or renter because of disability, in violation of 42 U.S.C. § 3604(f)(1); and

   B. Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B).

3. Order Defendants to take such affirmative steps as may be necessary to restore, as nearly as practicable, Complainant to the position she would have been in but for the discriminatory conduct;

4. Order Defendants to take such actions as may be necessary to prevent the recurrence of discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of their unlawful conduct, including implementing policies and procedures to ensure that no applicants or residents are discriminated against because of disability;

5. Award monetary damages to Complainant pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1); and

6. Order such additional relief as the interests of justice require.

DATE: November 4, 2022

ANDREW M. LUGER
United States Attorney

*s/ Kristen E. Rau*

KRISTEN E. RAU
Assistant U.S. Attorney
Attorney I.D. No. 0397097
District of Minnesota
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
E-Mail:kristen.rau@usdoj.gov